United States District Court
Southern District of Texas
**ENTERED**
August 26, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARIA FRANCIA NEPTUNE, §
§
        Plaintiff, §
§
v. §   CIVIL ACTION NO. H-21-1357
§
JOHN DOE and INDIAN HARBOR §
INSURANCE COMPANY, §
§
        Defendants. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Indian Harbor Insurance Company's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 24). For reasons stated below, the Defendant's MSJ will be granted.

**I. Factual and Procedural Background**

In the early morning of April 22, 2019, Plaintiff Maria Francia Neptune was driving on behalf of Lyft, Inc.[1] Plaintiff accepted a ride request by a minor passenger.[2] Upon arriving at the pickup location Plaintiff alerted the passenger of her arrival, the passenger got in the car, and Plaintiff locked her

---

[1] Plaintiff's Second Amended Complaint, Docket Entry No. 5, p. 2 ¶ 7. For purposes of identification, all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Video Deposition of Maria F. Neptune ("Plaintiff's Deposition"), Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, p. 48:4-8.

doors as usual.³ Plaintiff testified in her deposition that another person, John Doe, attempted to open the car door, but the passenger told Plaintiff to drive off without letting Doe in.⁴ As Plaintiff drove away, Doe shot at Plaintiff's vehicle, breaking the glass in her back window.⁵ Plaintiff drove with the passenger 15 miles to his destination apartment complex.⁶ While Plaintiff attempted to access the complex, Doe's vehicle pulled up and someone inside began shooting at Plaintiff's vehicle.⁷ Plaintiff testified that she knew one of her tires had been shot, based on her dashboard tire warning light.⁸ Plaintiff fled by making a U-turn, and Doe did not block her from making the U-turn.⁹ Plaintiff drove another 2.1 miles before crashing her vehicle.¹⁰ Plaintiff testified that Doe followed her out of the apartment complex, but that the last time she remembers seeing Doe's vehicle was at an intersection about 2 miles from the ultimate crash site.¹¹

---

³Id. at 23:8-9 & 25:18-21.

⁴Id. at 23:9-13.

⁵Id. at 23:13-14.

⁶Id. at 48:18-23.

⁷Id. at 23:21 thru 24:3.

⁸Id. at 36:12-25.

⁹Id. at 38:7-9.

¹⁰Defendant's MSJ, Docket Entry No. 24, p. 4.

¹¹Plaintiff's Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, pp. 43:8-10 & 46:18-21; Defendant's MSJ, Docket Entry No. 24, p. 5.

Plaintiff could not recall whether Doe continued shooting at her vehicle after leaving the complex.[12] After driving 2.1 miles from the complex, Plaintiff crashed her car.[13] Plaintiff testified that before the crash she attempted to turn right but struck an "island," described as "a division between two lanes."[14] Plaintiff lost control of the car when she "got up on that island."[15] Plaintiff testified that no vehicles were nearby when the crash occurred.[16] The crash caused Plaintiff "serious and permanent bodily injuries."[17]

Defendant issued a policy to Lyft that included Uninsured Motorists and Underinsured Motorists coverage for its drivers.[18] The policy was in effect at the time of Plaintiff's crash.[19] The policy states:

---

[12]Plaintiff's Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, p. 42:9-11.

[13]Id. at 43:16-20; Defendant's MSJ, Docket Entry No. 24, p. 4.

[14]Plaintiff's Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, pp. 43:21-25 & 47:6-9.

[15]Id. at 44:1-6.

[16]Id. at 49:14-18.

[17]Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 25, p. 2.

[18]Indian Harbor Insurance Company Commercial Lines Policy No. RAD5000549 ("the Policy"), Commercial Auto Coverage Part- Business Auto Declarations, Exhibit B to Defendant's MSJ, Docket Entry No. 24-2, p. 11.

[19]Id.

> [Indian Harbor] will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".[20]

The policy limits the definition of "uninsured motor vehicle" to:

> **5.b.** . . . a hit-and-run vehicle whose operator or owner cannot be identified. The vehicle must hit an "insured", a "covered auto" or a vehicle an "insured" is "occupying".[21]

On January 20, 2021, Plaintiff filed an Original Petition in the 113th Judicial District Court of Harris County, Texas, seeking damages based on Lyft's insurance policy with Indian Harbor Insurance Company ("Defendant" or "Indian Harbor").[22] On April 23, 2021, defendants Indian Harbor and Constitution State Services L.L.C. removed the case to this court invoking the court's diversity jurisdiction.[23] On July 26, 2022, Indian Harbor filed Defendant's MSJ.[24] On August 9, 2022, Plaintiff filed Plaintiff's Response.[25] On August 16, 2022, Defendant filed Defendant Indian

---

[20]The Policy, Exhibit B to Defendant's MSJ, Docket Entry No. 24-2, p. 39.

[21]Id. at 42.

[22]Plaintiff's Original Petition, Exhibit 1 to Defendants Indian Harbor Insurance Company and Constitution State Services L.L.C.'s Notice of Removal ("Notice of Removal"), Docket Entry No. 1-3.

[23]Notice of Removal, Docket Entry No 1, pp. 1, 4.

[24]Defendant's MSJ, Docket Entry No. 24.

[25]Plaintiff's Response, Docket Entry No. 25.

Harbor Insurance Company's Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply").[26]

## II. Legal Standard

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

### B. Texas Contract Law

Where "jurisdiction is based on diversity, we apply the substantive law of the forum state." Crownover v. Mid-Continent

---

[26]Defendant's Reply, Docket Entry No. 26.

Casualty Co., 772 F.3d 197, 201 (5th Cir. 2014) (internal quotations omitted). Texas substantive laws will therefore govern interpretation of the contract. Texas law provides that the interpretation of insurance contracts is generally governed by the same rules of construction that apply to contracts in general. RSUI Indemnity Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015). "Unless the policy dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." Id.

### III. Analysis

Defendant argues that Plaintiff's claim fails because the incident falls outside the policy's coverage.[27] Defendant argues that Plaintiff lacks evidence that the incident meets the Policy's requirement that the uninsured motorist's vehicle "hit" the insured or the insured's vehicle.[28] Defendant also argues that Plaintiff's injuries did not "arise out of" the use of a motor vehicle.[29]

### A. The Policy's Collision Requirement

The Policy limits coverage to instances where the uninsured motorist's vehicle hits the insured or her vehicle. It does so by

---

[27] Defendant's MSJ, Docket Entry No. 24, p. 2.

[28] Id. at 10.

[29] Id. at 8.

limiting the definition of an "uninsured motor vehicle" to vehicles that "hit an 'insured', a 'covered auto' or a vehicle an 'insured' is 'occupying'."[30] Defendant argues that Plaintiff has not provided evidence that Doe's vehicle hit Plaintiff or her vehicle.

Plaintiff asserts in her Response that Doe "hit Plaintiff's vehicle from behind causing Plaintiff to lose control of her vehicle."[31] Plaintiff's Response cites no evidence to support this allegation. The closest thing to supporting evidence is a single instance in Plaintiff's Deposition when, after her lawyer asked her whether a collision had occurred, Plaintiff answered that "[i]t's possible."[32]

Plaintiff's Second Amended Complaint nowhere mentions contact between the vehicles and alleged this explanation of the crash's cause: "As a result of the gunfire wherein Plaintiff's tires were shot, Plaintiff lost control of her vehicle, crashed and was caused to suffer serious and permanent bodily injuries."[33] Plaintiff has consistently testified that she does not recall any contact between the vehicles. When asked "did the vehicle hit your vehicle,"

---

[30]The Policy, Exhibit B to Defendant's MSJ, Docket Entry No. 24-2, p. 42 ¶ 5.b.

[31]Plaintiff's Response, Docket Entry No. 25, p. 2.

[32]Plaintiff's Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, p. 76:3-8.

[33]Plaintiff's Second Amended Complaint, Docket Entry No. 5, p. 2 ¶ 7.

Plaintiff responded "Not that I recall."[34] When asked the last time Plaintiff saw Doe's vehicle, she identified an intersection 2 miles from the ultimate crash site.[35] When asked why her car crashed, she testified "[b]ecause when I tried to turn right I was outside of my lane and that's when I got up on that island and lost control of my car."[36] Coverage under the policy requires the uninsured motorists's vehicle to hit the insured or her vehicle. Plaintiff provides no evidence to support a finding that Doe's vehicle hit hers. Plaintiff's claim therefore fails as a matter of law.

### B. "Arising out of" Use of a Motor Vehicle

The policy also limits coverage to injuries that "arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'"[37] Defendant argues that Plaintiff's injuries did not arise out of the use of Doe's vehicle,[38] because even if Doe's shooting caused Plaintiff's injuries, intentional shooting is an independent and intentional act and Doe's use of the vehicle was merely incidental to the shooting.[39]

---

[34]Plaintiff's Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, p. 43:14-15.

[35]Id. at 46:18-21.

[36]Id. at 43:21-25.

[37]The Policy, Exhibit B to Defendant's MSJ, Docket Entry No. 24-2, p. 39 ¶ A.1.

[38]Defendant's MSJ, Docket Entry No. 24, p. 8.

[39]Id. at 10.

The Texas Supreme Court has interpreted very similar uninsured motorist policies that only cover injuries "arising out of" the "use" of a motor vehicle. The court has interpreted this language several times in the context of firearm use.

In State Farm Mutual Automobile Insurance Co. v. Whitehead the Texas Supreme Court held that injuries from a drive-by shooting did not "arise out of" the use of a motor vehicle. 988 S.W.2d 744, 745 (Tex. 1999) (per curiam). The court reasoned that "the injuries [Plaintiffs] sustained did not result from the 'use' of the vehicle, as that term is contemplated in the policy. The shooting was an independent and intentional act not intended to be covered by the policy. 'Use' of the vehicle was incidental to the shooting." Id. In Collier v. Employers National Insurance Co. the 14th Court of Appeals held that injuries do not "arise out of" driving simply because the driving enabled the intentional shooting. 861 S.W.2d 286, 289 (Tex. App. – Houston [14th Dist.] 1993). The plaintiff sued under an uninsured motorist policy after "an unidentified vehicle pulled alongside [Plaintiff's car] and fired two shots at it." Id. at 288. The court held that the injuries did not "arise out of" the use of the vehicle because "[t]he shotgun, not the uninsured vehicle, was the instrument that caused [Plaintiff's] injury." Id. at 289. "Allowing coverage simply because an automobile . . . provided transportation to the location of a criminal act could lead to absurd and wide-ranging results." Id. "We hold that the term 'arising out of the use of

the uninsured motor vehicle' does not encompass drive by shootings and shootings from moving vehicles." Id. at 290.

In Mid-Century Insurance Co. of Texas v. Lindsey a minor attempted to gain entry to his parents' locked pickup truck. 997 S.W.2d 153, 154 (Tex. 1999). In doing so, he inadvertently touched a loaded shotgun mounted on the truck, causing it to discharge and injure someone in an adjacent car. Id. The court held that the injuries "arose out of the use of the" truck. Id. at 158. The court emphasized that "[i]t was the boy's efforts to enter the vehicle that directly caused the gun to discharge and [Plaintiff] to become injured." Id. The court reiterated Collier's conclusion that "[a] drive-by shooting involves a vehicle only incidentally." Id.

Defendant's policy only covers injuries that "arose out of" the use of a motor vehicle. At a minimum these cases make clear that intentional shooting is an act independent of driving a motor vehicle. Driving does not give rise to injuries simply by providing transportation that enables the shooting. To the extent that Doe's driving enabled him to shoot at Plaintiff's vehicle ultimately causing her injuries, those injuries did not "arise out of" Doe's use of a motor vehicle. Instead, Plaintiff needed to provide evidence to support a finding that Doe's vehicle "was the instrument that caused [her] injury." Collier, 861 S.W.2d at 289. As explained above, Plaintiff has not presented evidence to support a finding that Doe's car hit hers or that it caused her injuries in

any way other than enabling the intentional shooting. For this reason, Plaintiff's claim fails as a matter of law.

### IV. Conclusion and Order

For the reasons explained above, Defendant Indian Harbor Insurance Company's Motion for Summary Judgment (Docket Entry No. 24) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 26th day of August, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE